UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| DERRICK MATTHEW DOUGHERTY, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 2:22-cv-00579-JPH-MJD ) |
| COUNTY OF VERMILLION, INDIANA, MICHAEL R. HOLTKAMP, | ) ) ) ) |
| Defendants. | ) ) |

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff Derrick Dougherty claims that government officials from Vermillion County, Indiana, violated his First Amendment rights by blocking him on Facebook, seeking protective orders against him, and issuing him a no trespass warning. He brings free speech claims against the County and its Sheriff, Michael R. Holtkamp. Mr. Dougherty and Defendants have each filed a motion for summary judgment. Dkt. [31]; dkt. [42]. For the reasons below, Defendants' motion is **GRANTED** and Plaintiff's motion is **DENIED**.

### I.
### Facts and Background

The parties have filed cross-motions for summary judgment, so the Court takes the motions "one at a time." *Am. Fam. Mut. Ins. v. Williams*, 832 F.3d 645, 648 (7th Cir. 2016). For each motion, the Court views and recites the evidence and draws all reasonable inferences "in favor of the non-moving party." *Id.* That's not necessary here, however, because even when all evidence

1

is interpreted in Mr. Dougherty's favor, Defendants are entitled to summary judgment.

### A. Mr. Dougherty's interactions with Mr. Yocum

Tim Yocum is one of three Commissioners of Vermillion County. Dkt. 43-2 at 1. At all times relevant the allegations in Complaint, Derrick Dougherty was a resident of Vermillion County.

Mr. Yocum has three "Commissioner" Facebook pages, one used to "inform the community on projects and events that are going on in Vermillion County," another related to his campaign for County Commissioner, and a third for County business related to the highway garage, which he oversees. Dkt. 43-2 at 2. There is no designated evidence that Mr. Dougherty contacted or attempted to contact Mr. Yocum through any of those Facebook pages.

Mr. Yocum also has a personal Facebook page. While the Facebook pages that Mr. Yocum uses in connection with his role as a Commissioner each include the words "Vermillion County" in the name, his personal page only references "Tim Yocum." *Id.* at 1–2. To connect with Mr. Yocum on this personal page, a user must send him a friend request (or receive one from him). Dkt. 43-2 at 1.[1]

Between January 19, 2022, and February 2, 2022, Mr. Dougherty sent eight private messages to Mr. Yocum's personal Facebook account. Dkt. 43-2 at 3. Then, during the evening of February 16, 2022, and into the early

---

[1] As discussed in greater detail in Part V of this Order, Mr. Dougherty has not shown that Defendants made a false assertion in their summary judgment briefing or attached declarations.

morning hours, Mr. Dougherty sent 11 private messages and made two Facebook "calls" to Mr. Yocum, all through his personal Facebook page. *Id.* at 3. Mr. Yocum also received 7 phone calls between 3:03 and 3:09 a.m. on his personal Facebook page. *Id.* at 4. Some of the calls had no caller ID, but one included a voice message from Mr. Dougherty. *Id.*

That morning, Mr. Yocum told the Vermillion County Sheriff's Office about these calls and blocked Mr. Dougherty from his personal Facebook page. *Id.* At no time did Mr. Yocum block Mr. Dougherty from any of the three public "Commissioner" Facebook pages. *Id.* at 4. After being blocked from Mr. Yocum's personal Facebook page, Mr. Dougherty sent several emails to Mr. Yocum. *Id.* Mr. Yocum viewed Mr. Dougherty's "repeated communications" as harassment. *Id.* at 4–5.

Sheriff Mike Phelps[2] assigned Deputy Troy Vaughn to investigate Mr. Yocum's complaint. Dkt. 43-1 at 1. Sheriff Phelps did not tell Deputy Vaughn what to do or say during his investigation. *Id.* Deputy Vaughn went to Mr. Dougherty's home and informed him of the harassment claim. Dkt. 43-4 at 2. Mr. Dougherty admitted that he had contacted Mr. Yocum overnight. *Id.* Deputy Vaughn advised Mr. Dougherty that he had First Amendment rights, but that he should be careful what he says because "the butt hurt is real." *Id.* Deputy Vaughn also told Mr. Dougherty that the harassment complaint would "not necessarily go anywhere unless the behavior continued." *Id.* According to

---

[2] Sheriff Phelps is no longer the Vermillion County Sheriff. Dkt. 39 at 3 n.1. Therefore, the current Sheriff, Michael R. Holtkamp, is the named Defendant in this case, though the actions at issue concern then-Sheriff Phelps.

3

Mr. Dougherty, Deputy Vaughn told him that further harassing or derogatory statements would result in charges of "Criminal Harassment." Dkt. 31 at 4. The conversation lasted about 5 minutes. Dkt. 43-4 at 2.

On September 28, 2022, Mr. Yocum filed for a Petition for Protective Order against Mr. Dougherty. Dkt. 43-2 at 5. He sought to "prohibit [Mr. Dougherty] from harassing, annoying, telephoning, contacting, or directly or indirectly communicating with me." *Id.* Mr. Yocum also sought to have Mr. Dougherty "stay away" from the Vermillion County Courthouse, where he worked. On October 14, 2022, Mr. Yocum dismissed the protective order request. *Id.* at 6.

### B. Mr. Dougherty's interactions with Ms. Furry

On April 22, 2022, Mr. Dougherty sent an email to Brenda Furry, the County Auditor, saying he knew where Ms. Furry's car was parked and accusing her of trespassing by parking there. Dkt. 43-3 at 1. After receiving another email from Mr. Dougherty stating, "It seems that you have been spending a lot of time at the courthouse alone and/or after hours," Ms. Furry became "concerned because he knew I was alone at night, and he wanted me to know that he knew I was alone." *Id.*

Mr. Dougherty sent more emails on June 7, 2022, mentioning the rooms at the courthouse Ms. Furry was in and who she was with. *Id.* at 2. Ms. Furry prepared a written statement on June 21, 2022, expressing her concerns with Mr. Dougherty, and gave a copy of it to Mr. Phelps. *Id.*

On August 15, 2022, Sheriff Phelps assigned Deputy Michael Strader to investigate the statement submitted by Ms. Furry. Dkt 43-1 at 3; dkt. 43-5 at 1. Mr. Phelps did not tell him how to investigate Ms. Furry's statement. Dkt. 43-5 at 2. Deputy Strader reviewed the emails and spoke with Ms. Furry, advising her that she could seek a Protective Order if she felt unsafe. *Id.* at 1–2. Deputy Strader did not speak with anyone else in his investigation. *Id.* at 2. He wrote a probable cause affidavit that did not recommend any charges and submitted it to the County Prosecutor's Office. *Id.* He took no other action. *Id.*

## C. Mr. Dougherty's visit to the Illiana EMS Ambulance station

On August 9, 2022, the Clinton Police Department informed Deputy Vaughn that Mr. Dougherty had gone into the Illiana EMS Ambulance station and "yelled and screamed at them," and asked the County Sheriff's Office to give Mr. Dougherty a no-trespass warning. Dkt. 43-4 at 2. Illiana is a private company. Dkt. 43-1 at 2; dkt. 43-6 (business license). Deputy Vaughn went to Mr. Dougherty's house later that day and gave him a verbal no-trespass warning for two Illiana EMS stations and told him not to return to those stations. *Id.*

Mr. Dougherty then emailed Sheriff Phelps that Deputy Vaughn had given him the no trespass warning, which violated his rights under the United States and Indiana Constitutions. Dkt. 43-1 at 2. Sheriff Phelps told Mr. Dougherty that Illiana EMS had the right to keep Mr. Dougherty off his property, and that if he returned, he would be arrested for trespassing. *Id.*

## II.
## Procedural History

After the Court's ruling on Defendants' motion to dismiss, dkt. 39, the following claims remain: (1) claims against the County, *id.* at 7; (2) a retaliation claim against the Sheriff of Vermillion County in his official capacity, *id.* at 6–7; and (3) a state constitutional claim limited to injunctive relief, *id.* at 9.  Mr. Dougherty seeks summary judgment, dkt. 31, as do Defendants, dkt. 42.

## III.
## Summary Judgment Standard

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party must inform the court "of the basis for its motion" and specify evidence demonstrating "the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the moving party meets this burden, the nonmoving party must "go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial."  *Id.* at 324.

In ruling on cross motions for summary judgment, the Court takes the motions "one at a time," viewing and reciting the evidence and drawing all reasonable inferences "in favor of the non-moving party."  *Williams*, 832 F.3d at 648.

# IV.
# Analysis

Defendants characterize Mr. Dougherty's federal claims as two claims against the County and three claims against the Sheriff. Dkt. 43 at 1. Mr. Dougherty does not contest this framing, dkt. 45, which aligns with the events summarized in his complaint, dkt. 1.

### A. Claims against the County

Mr. Dougherty alleges that Vermillion County violated his First Amendment rights when Mr. Yocum (1) blocked Mr. Dougherty from his personal Facebook page, and (2) sought a protective order against Mr. Dougherty. Dkt. 1; dkt. 31 at 2. The County argues that these actions constituted "private action" rather than "state action" and therefore are not subject to the First Amendment's protections. Dkt. 43 at 12, 14–15.

Mr. Dougherty brings this suit under 42 U.S.C. § 1983, which requires the plaintiff allege "the violation of a right secured by the Constitution" and "that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Id.* at 49.

### 1. Blocking Mr. Dougherty from the Facebook page

The Supreme Court's recent holding in *Lindke v. Freed*, 601 U.S. 187 (2024), set forth a test to determine when a government official's social-media activity constitutes state action. Speech on social media is "attributable to the

State only if the official (1) possessed actual authority to speak on the State's behalf, and (2) purported to exercise that authority when he spoke on social media." *Id.* at 191. Accordingly, to be state action, any "alleged censorship must be connected to speech on a matter within [the public official's] bailiwick" and "[t]here must be a tie between the official's authority and the gravamen of the plaintiff's complaint." *Id.* at 199. These requirements recognize that public officials are also private citizens with their own constitutional rights and "protect[ ] a robust sphere of individual liberty" for those who serve as public officials. *Id.* at 196.

Here, there is no designated evidence that connects Mr. Yocum's authority as a Commissioner with his blocking of Mr. Dougherty from his personal account. Dkt. 43-2 at 4; *see Lindke*, 601 U.S. at 201. First, the designated evidence shows that Mr. Dougherty privately messaged and called Mr. Yocum on his personal Facebook page, and that Mr. Yocum blocked Mr. Dougherty from his personal Facebook page. Dkt. 43-2 at 3–4. Although the Facebook pages that Mr. Yocum used were not labelled "personal" and "official," the identifying information and descriptions on those pages made it clear that one was personal and the others were official. One Facebook page references only "Tim Yocum," while the others are titled "Tim R. Yocum Vermillion County Commissioner District 2," used to "inform the community on projects and events that are going on in Vermillion County," "Tim R. Yocum for Vermillion County Commissioner District 2," related to his campaign, and "Vermillion County District 2 Highway Department," for County business related to the

8

highway garage, which he oversees. Dkt. 43-2 at 1–2. Access to the "Tim Yocum" page requires authorization from Mr. Yocum via a friend request or acceptance of another's friend request while access to the other three are open to the public with no comparable privacy restriction. *Id.*

Mr. Yocum's blocking Mr. Dougherty from his personal Facebook account had nothing to do with Mr. Yocum's "responsibilities pursuant to state law." *Lindke*, 601 U.S. at 201. The designated evidence shows that Mr. Yocum blocked Mr. Dougherty "speaking in his own voice" rather than "in furtherance of his official responsibilities." *Id.* Therefore, no reasonable jury could find that Mr. Yocum acted in an official capacity when he blocked Mr. Dougherty from his personal Facebook page. *See id.* at 197 ("Thus, if [the government official] acted in his private capacity when he blocked [plaintiff] . . . he did not violate [plaintiff's] First Amendment rights—instead he exercised his own.").

### 2. Seeking a protective order against Mr. Dougherty

Mr. Dougherty next claims that Mr. Yocum violated his First Amendment rights when he sought a protective order against him. "The distinction between private conduct and state action turns on substance, not labels: Private parties can act with the authority of the State, and state officials have private lives and their own constitutional rights." *Lindke*, 601 U.S. at 197. Here, Mr. Dougherty has not designated evidence showing that Mr. Yocum was acting pursuant to his responsibilities as a County Commissioner when he filed the petition for the protective order. On the contrary, the uncontroverted evidence shows that Mr. Yocum felt personally harassed by Mr. Dougherty and that Mr. Dougherty's

9

communications impacted him "emotionally and mentally." Dkt. 43-2 at 5. Mr. Yocum filed for a protective order in the same way any citizen concerned about their personal safety could have. Merely being a public officeholder does not make Mr. Yocum's application for a protective order state action. *Lindke*, 601 U.S. at 200 ("For state action to exist, the State must be responsible for the specific conduct of which the plaintiff complains.").

Because Mr. Dougherty has not designated evidence showing Mr. Yocum acted "under color of state law," Vermillion County is entitled to summary judgment on Mr. Dougherty's § 1983 claims.[3]

### B.     Claims against the Sheriff

Mr. Dougherty alleges that his First Amendment rights were violated by the Sheriff when (1) Deputy Vaughn spoke with Mr. Dougherty about Mr. Yocum's harassment complaint; (2) the Sheriff's Department investigated complaints of harassment made against Mr. Dougherty by Ms. Furry; and (3) Deputy Vaughn issued a follow-up warning to Mr. Dougherty regarding the Illiana EMS.

Defendants argue there is no basis for municipal liability against the Sheriff's Department. Dkt. 43 at 20. Mr. Dougherty argues that Mr. Phelps ordered the investigations and "began coordinated efforts to silence" him. Dkt 31 at 5–6.

---

[3] Since the County is entitled to summary judgment because Commissioner Yocum did not act under color of state law, the Court does not consider Defendants' alternative argument that there is no basis for liability under *Monell*.

Mr. Dougherty sued the Sheriff in his official capacity. Dkt. 1 at 2; *see Monell v. Soc. Servs. Of City of N.Y.*, 436 U.S. 658, 690 n.55 (1978). To hold the Sheriff liable under *Monell*, Mr. Dougherty must allege a constitutional deprivation caused by (1) an express policy; (2) a widespread practice; or (3) a person with final policymaking authority. *See Orozco v. Dart*, 64 F.4th 806, 823 (7th Cir. 2023). Because Mr. Dougherty does not allege that a policy or practice caused the alleged constitutional violation, final policymaking authority is the only viable theory of *Monell* liability. Dkt. 39 at 4.

"Whether a particular official has final policymaking authority is a question of state law." *Wragg v. Vill. of Thornton*, 604 F.3d 464, 468 (7th Cir. 2010). Under Indiana law, the members of the county police force are employees of the county, and "the sheriff . . . of the county shall assign their duties according to law." Ind. Code. § 36-8-10-4(a). Moreover, Deputies Strader and Vaughn testified that they are not final policymakers. Dkts. 43-4 at 1; 43-5 at 1. *Monell* liability therefore cannot be premised on their actions alone. There is no dispute that as the Sheriff, Mr. Phelps had final policymaking authority, dkt. 43-1 at 1, but Mr. Dougherty still must designate evidence from which a jury could reasonably conclude that Mr. Phelps "approved the subordinate's decision *and the basis for it.*" *See Darchak v. City of Chicago Bd. of Educ.*, 580 F.3d 622, 630 (7th Cir. 2009).

Mr. Dougherty has not designated evidence that the Sheriff directed the Deputies' actions. While Mr. Phelps assigned Deputies Strader and Vaughn to investigate the claims of harassment and trespassing, dkt. 43-1 at 1, 3, he did

11

not personally participate in these investigations, direct them, or tell the Deputies what to do or say. *Id.* at 1–4; dkt. 43-4 at 1; dkt. 43-5 at 2. Mr. Phelps's sole action of assigning the deputies to conduct the investigations is not sufficient to support a *Monell* claim. *See J.K.J. v. Polk County*, 960 F.3d 367, 377 (7th Cir. 2020) (requiring a "direct causal link between the municipal action and the deprivation of federal rights"). Similarly, Mr. Dougherty has not designated evidence showing that Mr. Phelps approved of or condoned the specific actions the deputies took during their respective investigations. *See* dkt. 31. No reasonable jury could find for Mr. Dougherty under a *Monell* theory of ratification. *See Darchak*, 580 F.3d at 630. The assignments are the only actions attributable to Mr. Phelps, the final policymaker. Therefore, the Sheriff is entitled to summary judgment on the claims relating to his Deputies' investigations.

The last issue is Mr. Dougherty's claim that Mr. Phelps violated the First Amendment by warning Mr. Dougherty that he would be arrested for trespassing if he returned to Illiana EMS property. Dkt. 43-1 at 4. Defendants argue this claim fails because trespassing on private property is not protected activity.

A First Amendment retaliation claim requires the plaintiff to show that he (1) engaged in activity protected by the First Amendment; (2) suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was "at least a motivating factor" in Defendants' decision to take the retaliatory action. *Bridges v. Gilbert*, 557 F.3d

12

541, 546 (7th Cir. 2009). Here, Mr. Dougherty cannot show that he engaged in activity protected by the First Amendment because trespassing and speaking on private property is not protected activity. *See Lloyd Corp., Ltd. v. Tanner*, 407 U.S. 551, 567 (1972) ("[T]his Court has never held that a trespasser or uninvited guest may exercise general rights of free speech on property privately owned and used nondiscriminatorily for private purposes only."); *Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802, 813 (2019) ("The Constitution does not disable private property owners . . . from exercising editorial discretion over speakers on their property."). Therefore, Mr. Dougherty's retaliation claim fails.

Because no reasonable jury could find in favor of Mr. Dougherty on his federal claims against Mr. Phelps, the Sheriff is entitled to summary judgment.

### C.   Indiana Constitutional Claim

Mr. Dougherty also brings a claim under Article I, § 9 of the Indiana Constitution. *See* Ind. Const. Art. I, § 9 ("No law shall be passed . . . restricting the right to speak . . .on any subject whatever; but for the abuse of that right, every personal shall be responsible.").

"When all federal claims in a suit in federal court are dismissed before trial, the presumption is that the court will relinquish federal jurisdiction over any supplemental state-law claims." *RWJ Mgmt. Co., Inc. v. BP Prods. N. Am., Inc.*, 672 F.3d 476, 479 (7th Cir. 2012); 28 U.S.C. § 1367(c). "The presumption is rebuttable, but it should not be lightly abandoned, as it is based on a legitimate and substantial concern with minimizing federal intrusion into areas

13

of purely state law." *RWJ*, 672 F.3d at 479. The Seventh Circuit has identified three exceptions "that may displace the presumption":

> (1) the statute of limitations has run on the pendent claim, precluding the filing of a separate suit in state court; (2) substantial judicial resources have already been committed, so that sending the case to another court will cause a substantial duplication of effort; or (3) when it is absolutely clear how the pendent claims can be decided.

*Id.* at 480.

The parties have not addressed whether the Court should relinquish supplemental jurisdiction over the state law claim, but the factors weigh in favor of doing so. First, by bringing his state law claim in federal court under 28 U.S.C. § 1367(a), Mr. Dougherty tolled the statute of limitations on his state law claim. *Artis v. District of Columbia*, 583 U.S. 71, 75 (2018) ("We hold that § 1367(d)'s instruction to 'toll' a state limitations period means to hold it in abeyance, *i.e.*, to stop the clock."). Second, substantial judicial resources have not been spent on the state law claim. *RWJ*, 672 F.3d at 481 ("[C]oncerns about judicial economy have their greatest force when significant federal judicial resources have already been expended to decide the state claims."). Last, because Article I, § 9 is not an analog of the First Amendment of U.S. Constitution, *see Whittington v. State*, 669 N.E.2d 1363, 1368 (Ind. 1996) (noting that when analyzing this section, the Indiana Supreme Court "resist[s] the siren song of First Amendment jurisprudence"), the resolution of Mr. Dougherty's state law claim is not "absolutely clear," *RWJ*, 672 F.3d at 480.

Therefore, given the Court's resolution of the federal claims, "the center of gravity in the case has shifted to [Indiana free speech law]; these are issues ideally decided by an [Indiana] judge applying [Indiana] law." *RWJ*, 672 F.3d at 481.

In sum, the factors weigh in favor of the Court's relinquishing supplemental jurisdiction over Mr. Dougherty's state-law claim. The parties have until **August 22, 2024**, to show cause why the state law claim should not be dismissed without prejudice.

## V.
## Other Motions

Mr. Dougherty has also filed two identical motions for sanctions, dkts. [50]; [51], an emergency motion for a temporary restraining order, dkt. [54], and a motion to expedite ruling and add a defendant, dkt. [60].

Mr. Dougherty argues that sanctions are appropriate because Defendants falsely asserted that Mr. Yocum's Facebook page was a "personal" one. Dkt. 50 at 1. As relief, he requests summary judgment be granted in his favor, Defendants' summary judgment motion be stricken, and a show cause order be issued as to why sanctions should not be imposed. *Id.* at 2.

Mr. Dougherty has not shown that Defendants made a false assertion in their summary judgment briefing or attached declarations. As explained above, the designated evidence demonstrates that the Facebook page at issue was Mr. Yocum's "personal" page. Dkt. 56 at 3. This does not mean that it's inaccessible to others, but that a user must send Mr. Yocum a friend request to "connect" with him. Dkt. 43-2 at 1. Since there is no evidence Defendants

15

made false assertions, Mr. Dougherty's motions for sanctions are **denied**. Dkts. 50; 51.

Mr. Dougherty's motion for a temporary restraining order, dkt. 54, is **denied as moot** because Defendants are entitled to summary judgment on the merits of Mr. Dougherty's claims. *See Plummer v. Am. Inst. Of Certified Pub. Accountants*, 97 F.3d 220, 229 (7th Cir. 1996) (requiring plaintiff show a "reasonable likelihood of success on the merits" to obtain injunctive relief).

Mr. Dougherty's motion to expedite ruling and add a defendant is **granted in part and denied in part**. Dkt. [60]. It is **granted** to the extent that all pending motions in this case have been resolved in this Order. His additional request to add Britton Luther as a defendant is **denied**. *Id.* at 3.

Mr. Dougherty's request is construed as a Rule 15(a) motion for leave to amend. *See* Fed. R. Civ. P. Rule 15(a)(2). Although that rule provides that leave to amend "'shall be freely given when justice so requires,' it is not to be automatically granted." *Johnson v. Cypress Hill*, 641 F.3d 867, 872–73 (7th Cir. 2011). "District courts have broad discretion to deny leave to amend where there is undue delay, bad faith, dilatory motive [and] . . . undue prejudice to the defendants." *Id.* at 873.

The deadline to amend pleadings closed on April 21, 2023. Dkt. 17 at 3. Summary judgment has been fully briefed and discovery closed on October 6, 2023. Dkts. 17; 41. Since adding an additional defendant at this time would cause delay and prejudice, the motion to add Mr. Luther as a defendant is **denied**. *See Feldman v. Am. Mem'l Life Ins. Co.*, 196 F.3d 783, 793 (7th Cir.

1999) (finding that a district court's denial of plaintiff's motion for leave to add an additional defendant six months after the close of discovery and after summary judgment briefing had begun was justified).

## VI.
## Conclusion

Defendants' motion for summary judgment is **GRANTED**, dkt. [42], and Mr. Dougherty's motion for summary judgment is **DENIED**, dkt. [31] as to Mr. Dougherty's federal claims.   The parties have until **August 22, 2024**, **to show cause** why the Court should not dismiss Mr. Dougherty's state law claim without prejudice.

Mr. Dougherty's motions for sanctions, dkts. [50]; [51], are **DENIED**, and his motion for a temporary restraining order, dkt. [54], is **DENIED AS MOOT**. Mr. Dougherty's motion to expedite ruling is **granted in part** and **denied in part**.  Dkt. [60].

**SO ORDERED.**

Date: 7/23/2024

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:
DERRICK MATTHEW DOUGHERTY
3804 N Drake Ave
BSMT
Chicago, IL 60618

All electronically registered counsel